Anne Monroe ⎫
    vs.    ⎬ No. 79713.
Paul Lavimodiere ⎭

November 29, 1932.

JOSLIN, J. Heard on motion of the defendant for a new trial after a verdict by the jury in the sum of $37,500. The action is for breach of promise to marry.

Anne Monroe and Paul Lavimodiere, the plaintiff and the defendant, had known each other for over twenty years. She never married. He was married in 1906 and his wife bore him two children. For about three years after said marriage, the parties hereto were estranged. Thereafter, due in some measure to the intervention of Mrs. Lavimodiere, they became friends again. Mrs. Lavimodiere died October 10, 1925. About six weeks thereafter, the plaintiff and defendant met on the street in Woonsocket. She states that at this meeting the defendant spoke about his children and her love for them; of his dread of the approaching Christmas; of his hope that before another Christmas passed they would have a mother; and of his belief that she would be a wonderful mother to them.

The plaintiff contends that the second meeting between the parties was shortly before Christmas 1925. This took place in the front hall of her home. It was on this occasion that he proposed marriage and she accepted.

The following further facts appear from the plaintiff's testimony:

That defendant wished the marriage to take place six months thereafter but she suggested the indelicacy of his marriage until the lapse of a year after his wife's death; that he replied that they were both getting along in years and that a year was a long time; that he finally left it to her; that from Christmas 1925 until October 1926, the defendant called at her home eight or nine times and she went automobile riding with him four or five times; that during these occasions they talked of his children and his business; that marriage was discussed and the agreement to marry renewed; that he agreed to see the pastor of St. Charles Church and arrange for the marriage and also attend to obtaining the marriage license; that he wanted no public announcement of their engagement; that it was left to her to obtain the wit-

nesses; that she did see Mr. and Mrs. Collins and requested them to act as witnesses; that in October 1926 he told her he had heart trouble and a high blood pressure and on that account wanted to postpone the wedding; that she agreed to such postponement until such time as his health should improve; that he planned a trip to California and also to Florida; that he asked her to go along as his nurse but she declined; and that he abandoned his plans to go either to California or Florida, but that he did go to Canada, where he remained for several months, from which place he sent her a number of post cards.

During the several months subsequent to October 1926, the parties saw little of each other. The plaintiff contends that in February or March 1927, defendant told her he would be able to marry her shortly as his health had improved; that they talked about a honeymoon trip and the place they would live upon their return; that in preparation for the marriage she procured three new dresses which she exhibited to him; that the last time he called at her home was in April 1927; that thereafter she met him on the street several times and she told him of rumors that were current of his interest in another lady and that he denied the rumor; that she then wrote him a series of five letters; and that they met in January 1928, at which time he again denied the truth of the rumors, saying that she was the only one he would marry. Mr. and Mrs. Collins corroborated the fact that they were asked by the plaintiff to act as witnesses and that they agreed to do so.

On February 4, 1928, the defendant married another lady, the first information of which came to the plaintiff by a newspaper item.

The defendant has suffered two strokes and from the testimony of several physicians, it is clear that it would have been highly dangerous to

the defendant's health to require his attendance at the trial. Therefore his testimony was given by deposition.

The defendant absolutely denies ever making any promise of marriage. His position is that the plaintiff sought him and asked him to marry her but that he never agreed.

These facts are shown by the defendant's testimony:

As stated by the plaintiff, the parties met on the street about six weeks after his wife's death; that she asked him when he was going to get married and he replied not before the year has passed; that he called upon her but two times, once, briefly, in the spring of 1926, when he went there to borrow an umbrella, and again when she called him into her home to show him a metal ceiling; that he never went out with her; that he met her on the street in the downtown section of Woonsocket several times; that the only time he ever took her for an automobile ride was in April 1927, when he passed her home and she asked for a ride; that about every time he saw her, she spoke of marriage; that on one or more occasions, she charged him with going to see the widow; and that she proposed to him but he never agreed to marry her. He denies calling at her home on the occasion when she states the marriage contract was made; that he ever asked for permission to call upon her; that he ever told her she would make a good mother; that she told him Mr. and Mrs. Collins would be the witnesses; that he ever knew anything about the three dresses; and, finally, that he ever proposed marriage to her.

The foregoing but sketchily summarizes the testimony. It is apparent that it is sharply conflicting.

The issue thus is: Was there an express definite agreement between the parties to marry?

Each party charges the other with having made a marriage proposal. The plaintiff maintains that she ac-

cepted the defendant's proposal. The defendant denies both his proposal and her acceptance. Both agree that at some of their meetings the subject of marriage was discussed.

The defendant urges that the usual incidents of courtship do not appear to be present. This is undoubtedly true. No engagement ring was given by the defendant to the plaintiff, nor were there any gifts from him to her (except a $10 gift which the defendant denies). There was no evidence of the manifestations of affection customarily present between an engaged couple. But it must be borne in mind that these parties were of mature years and, while it is unusual it is quite conceivable, that at their ages and in their station and outlook upon life there could very likely be an engagement without the amenities which customarily attend affairs of the heart.

The fact that the defendant began seriously thinking of marriage six weeks after the decease of his wife may appear unnatural. It must not be overlooked, however, that his wife died after a prolonged illness of eleven months. Consideration must also be given to the fact that the defendant wanted someone to care for his children and it cannot be doubted that at that time he believed that the plaintiff would be good to them.

The Court also has given serious consideration to the matter of the letters, three of which—dated May 16, May 23 and December 5, 1927—are exhibits in the case, introduced by the defendant. The letters are in some measure self-serving. Making due allowance for this fact and giving consideration to the defendant's reaction following his receipt of the letters, the Court believes that weight is thereby added to the plaintiff's story. The post cards written by the defendant are entitled to consideration in view of the defendant's categorical denial of nearly all of the plaintiff's testimony. In the card of March 16, 1926,

the defendant writes "Will be back soon." On October 1, 1926, he closes with "Au revoir," and in another card he writes: "Dear Ann * * * Wishing that you (were) up here * * to see the beautiful Church . . .".

Defendant's counsel argues that the argument addressed to the jury by the plaintiff's counsel was impassioned both in its content and tone. Both counsel ably presented their respective sides to the jury and the Court cannot say that either outdid or had any unfair advantage over the other. The testimony given by each of the parties readily lent itself to the drawing of inferences and deductions by opposing counsel in their addresses to the jury. In the Court's charge the jury were instructed relative to the function of counsel's arguments. In the opinion of the Court, the jury's verdict was not improperly or unfairly influenced by the argument of the plaintiff's counsel.

The evidence, together with all the attending circumstances, submitted by each of the parties is such that different minds might naturally and fairly come to different conclusions. There are apparently inconsistencies and improbabilities in each story, many of which may be reconciled or explained. The defendant's own conduct contradicts many of his denials.

There is nothing to indicate that the jury were influenced by any improper motives or emotions in arriving at the conclusion in respect to the marriage agreement.

After a thorough and careful consideration of all the evidence, the Court has come to the conclusion that there is a preponderance in favor of the plaintiff and that the evidence justified a finding by the jury that the defendant had proposed marriage to the plaintiff and had been accepted. His change of mind or heart many months later cannot excuse him from the legal consequences which ensue.

In such circumstances the jury's verdict must stand on the question of liability.

Wilcox vs. Rhode Island Co., 29 R. I. 292;

M'Mahon vs. Rhode Island Co., 32 R. I. 237.

We proceed now to the question of damages. The plaintiff is 57 years of age. The defendant is about 5 years her senior. She was entitled to the benefits and advantages which this marriage would have brought her. He is the owner of considerable real estate which is encumbered with mortgages. The Court is satisfied that the tax values are not the realizable values. It further appears that he is the proprietor of the Woonsocket Lumber Company and he possesses certain other personal property. Many of the mortgages which he owns are of doubtful value. He has been in poor health since 1926 and he will never be restored to good health. The plaintiff's life as his wife would not have been enviable except possibly from the point of view of the wealth which she claims is his. According to the testimony he lived moderately. The jury exaggerated his wealth. During all the relations between the parties there was nothing improper. Plaintiff suffered no humiliation, no impairment of health. There was some mental suffering.

Under all the circumstances, the Court is of the opinion that the amount awarded by the jury is clearly excessive and is not supported by the weight of the evidence. If the verdict is reduced to the amount hereinafter stated, it is the judgment of the Court that substantial justice will result to both parties.

Defendant's motion for a new trial is granted on the ground that the damages are excessive, unless within five days the plaintiff remits so much of the verdict as is in excess of $20,000. In the event that such remittitur is filed, the motion for a new trial is denied.

Attorney for plaintiff: John R. Higgins.

Attorneys for defendant: Curran, Hart, Gainer & Carr, R. L. Daignault.